## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____
|  :
Karéon Sierra, a/k/a Caron Sierra,  :
|  :    3:15-cv-1520 (JAM)
      Plaintiff,  :
|  :
      v.  :
|  :
New England Personnel of Hartford, LLC,  :
Kathryn Clark Melanson, and Thomas  :
Melanson,  :
|  :    April 14, 2017
      Defendants  :
_____  :

### PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

In her Local Rule 56(a)(1) Statement and her memorandum of law, the plaintiff demonstrated that there exist no material facts in dispute as to several of the factual and legal matters that are at issue in this litigation, and that as to those matters she is entitled to summary judgment. For the reasons set out below, neither the defendants' Local Rule 56(a)(2) Statement nor their memorandum create a material dispute as to any of those matters.

## II.    THE COURT SHOULD DEEM EACH AND ALL OF THE PLAINTIFF'S LOCAL RULE 56(a)(1) STATEMENTS OF MATERIAL FACTS TO BE ADMITTED

The plaintiff has submitted a Local Rule 56(a)(1) Statement of fifty statements of material fact not in dispute. (Plaintiff's Rule 56(a)(1) Statement) Each statement cites to the evidence that supports it. (Id.) The defendants admit thirty-five of the fifty statements. (Defendants' Rule 56(a)(2) Statement) As to the fifteen that they deny, the defendants do not cite to any evidence to support the denial, as required by the local rules. (Id.) Therefore, each and all of the material facts set out in the Plaintiff's Rule 56(a)(1) Statement should be deemed admitted for purposes of the motion.

The District of Connecticut local rules require that a party moving for summary judgment must file and serve "a document entitled 'Local Rule 56(a)1 Statement,' which sets forth in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." D.Conn.L.Civ.R. 56(a)(1). The non-moving party must respond with a "'Local Rule 56(a)2 Statement,' which states in separately numbered paragraphs . . . corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied." D.Conn.L.Civ.R. 56(a)(2).

Local Rule 56 further requires that "Each statement of material fact . . . and each denial . . . must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D.Conn.L.Civ.R. 56(a)(3). Local Rule 56 cautions that "failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with Rule 56(a)1 . . . " Id.

This Court has ruled that, "the facts set forth in a moving party's statement under Local Rule 56(a)(1) will be deemed admitted if a non-moving party fails to file a proper counterstatement of material facts as required under Local Rule 56(a)(2) and 56(a)(3)." *Knight v. Cerejo*, 3:13-cv-1882, fn. 1 (D.Conn. 2015).[1] Deeming facts to be admitted where the non-moving party fails to cite evidence countering them is consistent with the summary judgment standard, requiring that the non-moving party must "go beyond the

1 A copy of the unpublished decision is attached hereto.

2

pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

Here, the defendants have failed to cite to any evidence to support their denials of the plaintiff's material facts not in dispute. The plaintiff requests that the Court deem each and all of the plaintiff's Local Rule 56(a)(1) statements to be true for purposes of the motion for summary judgment.

### III.   THERE ARE NO MATERIAL FACTS IN DISPUTE THAT THE PLAINTIFF WAS NOT SUBJECT TO THE ADMINISTRATIVE EXEMPTION TO THE FLSA

#### A.   The plaintiff did not perform duties directly related to the general business operations of defendant NEP's clients

The federal regulation interpreting the FLSA's administrative exemption requires that, for an employee to be subject to this exemption, her "primary duty must be the performance of work directly related to the management or general business operations *of the employer or the employer's customers*." 29 C.F.R. §541-201(a) (*emphasis added*). In her memorandum the plaintiff has shown that her primary duty, the preparation of candidates for employment to be placed with NEP's customers, did not relate to the management or general business operations of defendant NEP, but involved preparing NEP's "product." (Pl.Mem., pp. __)

The defendants do not appear to dispute that the plaintiff's duties did not relate to the general business operations of NEP; instead, they assert that the plaintiff's work "directly related to the management or general business operations of NEP's customers through providing a human resource and staffing function." (Def.Mem., p. 5)

29 C.F.R. §541-201, cited above, provides that, "An employee may qualify for the

administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, *employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt*." 29 C.F.R. §541.201(c) (*emphasis added*).

The plain language of the regulation shows that for an employee to come within this prong of the exemption they must function as "advisers or consultants" to the client or customer of their employer. Id. The plaintiff's work plainly cannot be so characterized.

The plaintiff has included in her Rule 56(a)(1) Statement, as statements of material fact not in dispute, that "The plaintiff was told not to have any client contact at any time by any method," and that "At NEP, the plaintiff played no role in identifying candidates; instead, the names and resumes of potential candidates were provided to her by Kathryn Clark Melanson. Nor did the plaintiff play any role in placing candidates; in fact, she was prohibited from having contact with NEP clients." (Plaintiff's Rule 56(a)(1) Statement, ¶¶ 37-38) As discussed in Section II, above, the defendants have denied these statements but have cited to no evidence in support of their denial. Nor have the defendants alleged any material facts in dispute that the plaintiff's duties included any interaction with NEP's customers. Thus, there is no evidence that the plaintiff's primary duty was to act in an advisory or consultative capacity with respect to NEP's clients.

The defendants cite to one U.S. Department of Labor Opinion Letter and three district court opinions which they assert show "that employees in a recruiting and staffing positions perform work 'directly related to management or business operations of their employers or their employer's clients.'" (Def.Memo., pp. 6-7) However, the

4

employees in each of these opinions were engaged in direct interactions with the employer's clients or customers.[2]

The USDOL Opinion Letter addresses "Staffing Managers" whose duties included negotiating a wage for the candidate to be placed with the employer's client, as well as the ongoing supervision of the placed candidate. 2005 DOLWH Lexis 59. In *Andrade v. Aerotek*, Inc., 700 F.Supp.2d 738 (D. Md. 2010), the district court found that the employee's duties included responsibility to "'manage contract employees while on assignment' and to '[a]ssess and investigate contractor related problems, and administer performance counseling, coaching and disciplinary measures when necessary.'" *Andrade v. Aerotek, Inc.*, 700 F.Supp.2d 738, 742 (2010). In *Hudkins v. Maxim Healthcare Services, Inc.*, 39 F.Supp.2d 1349 (M.D.Fla. 1998), the duties of the employee, though titled a Recruiter, included "approving higher rates of pay for nurses when the occasion demanded it . . . counseling and disciplining nurses who did not provide good services to the Defendant's clients; and . . . participating in the termination of nurses who did not provide good services to the Defendant's clients." *Hudkins v. Maxim Healthcare Services, Inc.*, 39 F.Supp.2d 1349, 1350 (M.D.Fla. 1998). Finally, in *Goff v. Bayada Nurses, Inc.,* 424 F. Supp. 2d 816 (E.D. Pa. 2006), the employee placed nurses with the employer's clients and "was involved in 'case managing to ensure that the employee retains a positive relationship with the client and/or family while adhering to standards.'" *Goff v. Bayada Nurses, Inc.*, 424 F.Supp.2d 816, 824 (2006).

---

2An additional USDOL Opinion Letter cited by the defendants and attached addresses whether "HR generalists/analysts and university technical recruiters" are subject to the administrative exemption. 2000 DOLWH Lexis 10. That opinion letter, however, describes "recruiters" who were employed directly by the university for whom they placed employees and therefore adds nothing to the defendants' arguments.

Each of the cases cited by the defendants comports with the regulatory requirement that administrative employees performing work directly related to general business operations of their employer's clients or customers must be "acting as advisers or consultants." None, however, parallel the situation here, where the defendants prohibited any contact between the plaintiff and their clients. Thus, the defendants' argument that the plaintiff was an administrative employee whose work directly related to the management or general business operations of their clients fails.

**B.**   **The plaintiff's did not customarily and regularly exercise discretion and independent judgment**

For an employee to be subject to the FLSA's administrative exemption, they must "customarily and regularly exercise[] discretion and independent judgment." 29 C.F.R. § 541.2(a). *Davis v. J.P. Morgan Chase & Co*, 587 F.3d 529, 531 (2nd Cir. 2009). The defendants cite this important legal standard in a title heading, but in their memorandum state only that the plaintiff's duties "required a great degree of discretion and independent judgment," or "a significant degree [sic] independent judgment," or "broad discretion." (Def.Memo., p. 8) Nonetheless, there are no material facts in dispute by which the defendants could show that the plaintiff customarily and regularly exercised discretion and independent judgment in the position of Recruiter/Executive Recruiter.

The defendants' response to the plaintiff's memorandum relies heavily on the document titled "Executive Recruiter Job Description," and they repeatedly cite its specific language as evidence of the plaintiff's job duties. (Def.Memo., pp. 7-9) However, as the plaintiff stated in her Local Rule 56(a)(1) statement and as discussed in her memorandum, she was never shown the document during her employment and

6

there is no evidence that the defendants created the document until some time after the plaintiff' employment. (Plaintiff's Rule 56(a)(1) Statement, ¶¶ 28, 29; Pl.Mem., p. 19, fn 5) The defendants deny these statements but cite no evidence in support of their denials. (Defendants' Rule 56(a)(2) Statement, ¶¶ 28, 29) As the plaintiff has discussed, above, in Section II, the plaintiff's statements of fact should be deemed admitted where the defendants have failed to cite evidence countering them. Thus, arguments premised on the language of the "Executive Recruiter Job Description" should be given no weight.

The plaintiff has provided numerous examples of Kathryn Clark Melanson's close supervision of the details of her work, including a description of the specific job functions and the manner in which the plaintiff was directed to perform them, and a number of highly specific and detailed written directives sent to the plaintiff and other Recruiters/Executive Recruiters instructing them on how to perform even the most mundane office tasks. To make out their case that Melanson's close supervision did not decrease the plaintiff's exercise of discretion and independent judgment, the defendants cite to *Andrade v. Aerotek, Inc.*, 700 F.Supp.2d 738 (D. Md. 2010), for the proposition that "the fact that an administrative employee is subject to supervision is not fatal to a claim that an employee is exempt from overtime compensation." (Def.Mem., p. 10) This is a serious mis-statement of the cited case, in which it was the *absence* of supervision (the employee operated " completely on her own, free from scrutiny") that helped the court to determine that a plaintiff exercised independent judgment and discretion and therefore qualified for the administrative exemption. *Andrade*, at 748.

Moreover, in direct contrast to the facts of the case at bar, the *Andrade* court found that, "Once a contractor was hired by a client company, [employee] also used

discretion as she managed the contract employees while on assignment, assessed and investigated contractor problems, and counseled and disciplined contractors. There is no evidence that she did this under the direct scrutiny of a supervisor." *Id.* Plainly, the facts relied upon by the district court in Andrade to determine that an employee was subject to the administrative exemption are not present here.

The plaintiff has shown there are no disputed issues of material fact that would permit the defendants to show that she regularly exercised discretion and independent judgment in the performance of her duties. Therefore, the plaintiff has shown that a grant of summary judgment is supported.

## IV. THERE ARE NO MATERIAL FACTS IN DISPUTE THAT THE PLAINTIFF WAS NOT AN EXEMPT EMPLOYEE UNDER THE FLSA "RETAIL SALES" EXEMPTION OR THE CONNECTICUT "INSIDE SALES" EXEMPTION"

### A. Defendants should not be permitted to assert for the first time, at summary judgment, that the plaintiff is subject to the FLSA's Section 7(i) retail sales exemption

In defendants' memorandum opposing summary judgment they assert that "the plaintiff provides little to no analysis as to whether she is properly designated as exempt as an appropriate commissioned employee of a retail or service establishment." (Def.Mem., pp. 15-16) The absence of such analysis is easily explained: the defendants failed to plead the federal FLSA's Section 7(i) retail sales exemption as an affirmative defense, or to disclose it in discovery. The defendants' failure to plead or disclose the exemption is a sufficient basis for the Court to decline to consider it here.

As with other exemptions that are available to employers under the Fair Labor Standards Act, the retail sales exemption stated in 29 U.S.C. §207(i) is an affirmative

defense that the employer bears the burden of pleading and proving. See, *Charlot v. Ecolab, Inc.*, 136 F.Supp.3d 433, 448-49 (E.D.N.Y. 2015).

The defendants' Fourth Affirmative Defense states "Plaintiff was an exempt employee at all times that she was employed by the defendants and as such cannot claim relief for unpaid overtime pay." (Pl.Ex. 2) In discovery the plaintiff inquired as to the specific exemption(s) that the defendants were asserting. Plaintiff's Interrogatory #16 asks:

> Defendants' Fourth Affirmative Defense alleges "plaintiff was an exempt employee at all times that she was employed by the defendants and as such cannot claim relief for unpaid overtime pay." Please state any and all facts known to the defendants that they assert support their affirmative defense, including but not limited to an identification of the exemptions that the defendants believe applied to the plaintiff.

(Pl.Ex. 3) The defendants responded:

> Employee was exempt pursuant to Connecticut General Statutes §31-58,31-76i; and 29 U.S.C. §213(a)(l). For factual support of this classification please see Executive Recruiter Job Description and Employment Contract included with response to requests for production.

(Id.) Responding to a request that they clarify their response, the defendants stated:

> In addition to previously produced documents to this interrogatory, the defendants respond that the plaintiff was an exempt employee under Connecticut General Statutes §31-58; §31-76i(e),(f), and (g); and 29 U.S.C. §213(a)(1). This belief was founded on the fact that during the relevant period of time, 2011-2014, Kareon Sierra provided administrative services, as well as provided sales service in exchange for commission-based compensation based on her own efforts. Further, such commission-based income comprised the majority of her income as is reflected in the previously produced Earnings Records and Commission Tracking and was the result of her own self-directed efforts.

(Pl. Ex. 12) The defendants having failed to plead or disclosed the FLSA's retail sales exemption, should not be permitted to rely upon it at summary judgment or at trial.

9

**B.     Defendant NEP is not a "retail or service establishment" subject to FLSA Section 7(i)**

Notwithstanding the defendants' failure to plead or disclose the Section 7(i) retail sales exemption, were the Court to consider the exemption, the regulatory and judicial interpretations of its application and scope show that it does not apply to the defendants' enterprise and may not bar the plaintiff's claim for overtime wages.

Section 7(a) of the Fair Labor Standards Act prohibits employers to require an employee to work "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.29 U.S.C. §207(a). In addition to the more well-known "white collar" exemptions to Section 7(a), Section 7(i) of the FLSA states:

> No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. §207(i).

Thus, for an employer to invoke the Section 7(i) exemption, it must first show that it is a "retail or service establishment." Evaluating an employer's showing requires "a case-by-case approach that considers all circumstances relevant to the business at issue is necessary in making this determination." *Charlot v. Ecolab, Inc.*, supra, at 458.

The Department of Labor regulations state: "'retail or service establishment' means an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 C.F.R. §779.411.[3] The regulations also state that a retail or service establishment is "one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process." 29 C.F.R. §779.318(a).

The regulations also discuss what is *not* a "retail or service establishment."

The term "retail" is alien to some businesses or operations. For example, transactions of an insurance company are not ordinarily thought of as retail transactions. The same is true of an electric power company selling electrical energy to private consumers. As to establishments of such businesses, therefore, a concept of retail selling or servicing does not exist. That it was the intent of Congress to exclude such businesses from the term "retail or service establishment" is clearly demonstrated by the legislative history of the 1949 amendments and by the judicial construction given said term both before and after the 1949 amendments. It also should be noted from the judicial pronouncements that a "retail concept" cannot be artificially created in an industry in which there is no traditional concept of retail selling or servicing. . . .  It is plain, therefore, that the term "retail or service establishment" as used in the Act does not encompass establishments in industries lacking a "retail concept". Such establishments not having been traditionally regarded as retail or service establishments cannot under any circumstances qualify as a "retail or service establishment" within the statutory definition of the Act, since they

---

3       The definition originated in a repealed portion of the FLSA, but courts, like the USDOL, have continued to apply the definition. See, *Johnson v. Wave Comm GR LLC*, 4 F.Supp.3d 423, 434 (N.D.N.Y. 2014) ("Section 207(i) of Title 29 of the United States Code lacks guidance on what constitutes a 'retail or service establishment.' Courts have continued to apply the definition contained in the repealed '§ 13(a)(2)' of the FLSA in determining whether an employer is a retail or service establishment.").

> fail to meet the first requirement of the statutory definition. Industry usage
> of the term "retail" is not in itself controlling in determining when business
> transactions are retail sales under the Act. Judicial authority is quite clear
> that there are certain goods and services which can never be sold at retail.
> . . .

29 CFR §779.316 (internal citations omitted). The regulations identify "Employment

Agencies" as one of the "establishments to which the retail concept does not apply," and

which do not, therefore, constitute retail or service establishments for purposes of the

retail sales exemption. 29 CFR §779.317. While not dispositive, the USDOL regulations

provide the courts "with guidance simply because they reflect the position of those most

experienced with the application of the Act." *Brennan v. Great Am. Discount & Credit*

*Co., Inc.*, 477 F.2d 292, 296-297 (5th Cir. 1973).

Courts that have considered whether employment agencies are excluded from

the category of "retail or service establishment" have consistently been in concurrence

with the regulations (29 C.F.R. §779.317 cites *Yunker v. Abbye Employment Agency,*

*Inc.*, 32 N.Y.S. 2d 715 (N.Y.C. Munic. Ct. 1942) as support for the proposition that

employment agencies are "establishments to which the retail concept does not apply").

In *Schussler v. Employment Consultants, Inc.*, 333 F.Supp. 1387 (N.D.Ill. 1971),

the district court found "no difficulty in concluding that an employment agency, which

has as its primary goal either locating employees for private companies or finding jobs

in private companies for persons seeking employment does not involve what is

customarily considered a retail service."  *Schussler v. Employment Consultants, Inc.*,

333 F.Supp. 1387, 1388,1390 (N.D.Ill. 1971). Even if the outcome were less clear, the

employer failed to provide evidence that the nature of the enterprise is "recognized as

retail sales or services in the particular industry." *Id.* at 1391.

Similarly, the 5th Circuit Court of Appeals in *Brennan v. Great Am. Discount & Credit Co., Inc*., supra, reversed a district court finding, and held that employment agencies that "locate, on a local basis and without the assistance of other agencies, suitable employment for clients, who generally pay the placement fee," are not "retail or service establishments." *Supra*, at 293.

In *Lorinser v. B&B Employment*, 190 N.W.2d 21(N.D. 1971), the defendant's enterprise "consisted mainly of finding employers who needed temporary employees, and then finding employees for those employers."  The North Dakota Supreme Court reversed a lower court and ruled that "the providing of temporary employees by B&B company was not a selling of a service to satisfy the needs of the general community, but was a selling of services to satisfy a special segment of the community." *Id.*

Even where a type of business may be engaged in retail sales, it still bears the burden of showing that it is, in fact, a retail or sales establishment for purposes of the Section 7(i) exemption. In *Homemakers Home & Health Care Services*, Inc. v. Carden, 538 F.2d 98 (6th Cir. 1976), the Sixth Circuit Court of Appeals distinguished the employer's business as a temporary agency from the kind of employment agencies described in the cases above, but nonetheless concluded that the employer had failed to meet its burden of showing that it fell within the exemption. *Homemakers Home & Health Care Services, Inc. v. Carden*, 538 F.2d 98 (6th Cir. 1976). Based on the evidence, the Court determined that the business, which served the general public, was not inconsistent with the "retail concept" reflected in the regulations. Id, at 104. The Court contrasted the nature of the employer's business of placing temporary employees with "employment agencies" of the type described in *Yunker v. Abbye Employment*

13

*Agency, Inc.*, supra, and in the USDOL regulations. Id., 103-104.

The Court then inquired whether the employer had provided sufficient evidence that it's line of business was "recognized as retail sales or services in the particular industry." observing that:

> Such a determination must take into consideration the well-settled habits of business, traditional understanding and common knowledge. These involve the understanding and knowledge of the purchaser as well as the seller, the wholesaler as well as the retailer, the employee as well as the employer, and private and governmental research and statistical organizations. The understanding of all these and others who have knowledge of recognized classifications in an industry, would all be relevant in the determination of the question.

Id., at 106. The Court was not persuaded by the employer's evidence, a poll taken of "temporary help contractors" that showed that participants in the industry considered themselves to be in retail. The Court found that"[I]t was not the intent of this provision to delegate to employers in any particular industry the power to exempt themselves from the requirements of the Act." Id. The Court upheld the district court's opinion that the employer did not meet the requirements of the retail sales exemption. *Id.*

In the instant matter, the defendants identify two factors that they assert show NEP qualifies as a retail or service establishment. (Def.Memo., p. 16) First, the defendants note that "the plaintiff has not advanced any evidence that would exclude NEP from being classified" as a retail or service establishment. (Id.) Yet it is beyond dispute that it is the employer's burden to show that an FLSA exemption "plainly and unmistakably" applies. *A.H. Phillips, Inc., v. Walling*, 324 U.S. 490, 493 (1945) ("To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the

people.") The absence of any discussion of the exemption in the plaintiff's memorandum does not support the conclusion that the defendants are entitled to the exemption.

Second, the defendants assert that "the evidence that does exist shows that under FLSA's framework that [sic] NEP does qualify as a service establishment." (Def.Memo., p 16) However, after making this statement and citing to (some) of the relevant regulations, the defendants do not cite to any evidence cite. Even absent the USDOL's guidance that employment agencies such as NEP do not come under the exemption, it remains that the defendants have provided no evidence that the business "is recognized as retail sales or services in the particular industry."  29 C.F.R. §779.411 (mis-cited by the defendants as 29 C.F.R. §779.332, at Def. Memo., p. 17)

Because the defendants cannot meet their burden of showing that defendant NEP is a "retail or service establishment," they are unable to show "plainly and unmistakably" that the FLSA's Section 7(i) exemption applies to the plaintiff.

### C.    Conn.Gen.Stat. §31-76i(g) "inside sales" exemption does not apply

Connecticut's overtime statute parallels the language of FLSA Section 7(a), supra. Conn.Gen.Stat. §31-76c. As with the FLSA, there are exemptions, which are set out at Conn.Gen.Stat. §31-76i.

Connecticut's Supreme Court has long held that "The minimum wage law . . . should receive a liberal construction as regards beneficiaries so that it may accomplish its purpose. . . . In furtherance of that principle, it is essential that exemptions or exclusions be strictly and narrowly construed. . . . The burden rests on the employer to establish that his employees come within an exemption. *Walling v. General Industries Co.*, 330 U.S. 545, 548, 67 S.Ct. 883, 91 L.Ed. 1088."

*Shell Oil Co. v. Ricciuti,* 147 Conn. 277, 160 A.2d 257 (1960) (internal citations omitted).

Conn.Gen.Stat. 31-76i includes an "inside sales" exception, stating that the

general rule for payment of employee overtime does not apply to:

> . . . any inside salesperson whose sole duty is to sell a product or service (1) whose regular rate of pay is in excess of two times the minimum hourly rate applicable to him under section 31-58, (2) more than half of whose compensation for a representative period, being not less than one month, represents commissions on goods or services, and (3) who does not work more than fifty-four hours during a work week of seven consecutive calendar days. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

Conn.Gen.Stat. §31-76(i)(g).

The "inside sales exemption" is not further explained in the statute or in

Connecticut Department of Labor regulations, and the language appears to track that of

the FLSA's retail sales exemption. The Connecticut Supreme Court has stated that,

because of parallels in language between the FLSA and Connecticut law with respect to

the language of 31-76(i), "interpretation of the Connecticut exemption is aided by federal

precedent respecting the meaning and scope of the analogous federal exemption."

*Roto-Rooter Services Co. v. Department of Labor*, 219 Conn. 520, 528 fn. 8 (1991). The

defendants do not appear to dispute this proposition, but state only that "Connecticut

law imposes an additional requirement that the employee in question work no more than

fifty-five hours in a week." (Def.Memo., p. 18) For these reasons, the defendants'

relianece on Connecticut's "inside sales" exemption must fail, where they have failed, as

discussed above, to show that defendant NEP is a "retail or service establishment."

As to the additional requirement under the "inside sales" exemption that the plaintiff not have worked more than fifty-five hours in a week, the defendants proffer no admissible evidence. The defendants assert that "the most that [the plaintiff has ever alleged was 48.5 hours in a given week" and cite to Defendant's Exhibit C. (Def.Memo., p. 18) However, the document the defendants cite only reflects the CTDOL's calculations based on its investigation. There is nothing in the record explaining how these numbers were calculated, or upon what underlying evidence; nor is there testimony by the CTDOL investigator, nor is there evidence that the plaintiff concurred with the CTDOL's calculation. Thus, Def.Ex. C is inadmissible to show the number of hours that the plaintiff worked in any one week period. (Def,Ex. C, pp. 11-13)

As with the FLSA's Section 7(i) retail sales exemption, the defendants are unable to show that the plaintiff was "plainly and unmistakably" within the ambit of Connecticut's parallel "inside sales" exemption. Therefore, the plaintiff requests that the Court enter summary judgment as to her claim for overtime wages under Connecticut law.

## V.   SUMMARY JUDGMENT IS APPROPRIATE AS TO OTHER OF THE PLAINTIFF'S CLAIMS AND THE DEFENDANTS' DEFENSES

### A.   Thomas Melanson was an "employer"

The defendants do not dispute that New England Personnel of Hartford, LLC, and Kathryn Clark Melanson are each an employer for purposes of the plaintiff's FLSA and Connecticut wage and hour claims. The defendants assert, however, that Thomas Melanson was not an employer "[b]ased on a serious disability." (Def.Mem., p. 19) The evidence does not support the defendants' position.

The plaintiff has alleged material facts showing Thomas Melanson's active

17

involvement in the ownership, management, and operation of New England Personnel of Hartford, LLC, throughout her employment. (Pl. 56(a)(1) Statement, §§11-17) As discussed in Section II, above, these facts should be deemed admitted where the defendants have failed to point to any evidence that controverts them.

Defendants's position relies entirely on Kathryn Clark Melanson's bare statement that Thomas Melanson did not play an active role in NEP during the plaintiff's employment because of his health. (Def.Mem., p. 20) Defendants point to no medical evidence or opinion demonstrating a lack of capacity, but only assert that "An individual who has suffered seven strokes, culminating in a massive stroke over the course of two years is unlikely to be as involved in the running of a business as the plaintiff describes." (Id.) Defendants' conjecture does not create a disputed issue of material fact.

The plaintiff respectfully requests that the Court find defendant Thomas Melanson was, during the plaintiff's employment, an employer for purposes of her claims under the FLSA and Connecticut wage and hour laws.

**B.     The defendants cannot show admissible evidence that they took any affirmative steps to determine whether the Recruiter/Executive Recruiter position was administratively exempt**

The only evidence proffered by the defendants that they undertook any affirmative steps to determine whether they were obligated to pay the plaintiff overtime wages is Kathryn Clark Melanson's testimony that the defendants had been:

> very involved with labor law from the standpoint of being constantly updated by various Internet research that we do. At one time we were heavily involved with the National Association of Personnel Consultants, both on a national level as well as a state level, and they're continuously keeping you updated with items of these matters. In addition to the fact we are an employment placement firm; therefore, we're always being provided information by many of our clients as to all this information.

18

(Def.Mem. pp. 21-22, citing to Def.Ex. A, Tr. 96:24-97:9). Melanson's testimony fails to create a material dispute that the defendants undertook any affirmative steps.

First, there is no evidence that the "various internet research that we do" included any inquiry whether the Recruiter/Executive Recruiter position was exempt from overtime. Second, there is no evidence that the National Association of Personnel Consultants possessed any information regarding overtime exemptions or conferred such knowledge on the defendants. Finally, there is no evidence that any of the defendants' clients possessed any such knowledge or conferred it on the defendants.

On the other hand, there is evidence in the record that prior to the plaintiff's employment, Kathryn Clark Melanson received criminal convictions for false statements made in connection with a Connecticut Department of Labor investigation. That evidence goes to both the question of good faith efforts to comply with labor laws, and with Melanson's credibility as a witness.

The plaintiff submits that the material evidence is undisputed that the defendants took no steps to ascertain their obligations under the FLSA and Connecticut overtime laws, and were therefore at least in reckless disregard of those obligations. The plaintiff respectfully requests that the Court enter summary judgment that 1) the applicable FLSA statute of limitations in the case at bar is three years; and 2) double damages are properly awarded to the plaintiff under the FLSA and Connecticut wage and hour laws.

## VI.    CONCLUSION

For the reasons set out in the plaintiff's motion and original memorandum and herein, and because there are no disputed issues of material fact, the plaintiff requests

that the Court grant her motion for summary judgment as the following:

1.      The plaintiff worked more than forty hours a week in at least some weeks of employment, and was not paid overtime premium pay in violation of the FLSA and Connecticut overtime laws;

2.      The defendants' affirmative defenses that the plaintiff was an employee subject to the administrative exemption to the FLSA or to Connecticut overtime laws fails;

3.      The defendants' affirmative defenses that the plaintiff was an employee subject to the "retail sales" exemption to the FLSA or the "inside sales" exemption to Connecticut overtime laws fails;

4.      Defendant New England Personnel of Hartford, LLC, and the individual defendants, Kathryn Melanson and Thomas Melanson are each and all liable as "employers" of the plaintiff pursuant to the FLSA and Connecticut overtime laws;

5.      The applicable statute of limitations to the plaintiff's FLSA overtime claim is three years; and

6.      As to any wages owed to the plaintiff, she is entitled to an award of double such amounts pursuant to the FLSA and to an award of double such amounts pursuant to Connecticut overtime wage statutes.


                              RESPECTFULLY SUBMITTED,
                              FOR THE PLAINTIFF

                               / s /  *Peter Goselin ct06074*
                              The Law Office of Peter Goselin
                              557 Prospect Avenue, 2nd Floor
                              Hartford, Connecticut 06105
                              Tel. 860-580-9675
                              Fax 860-471-8133
                              pdgoselin@gmail.com

**CERTIFICATION**

I hereby certify that on April 14, 2017, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. I further certify that a hard copy of the foregoing, and of all exhibits hereto, will be sent by first class mail to the chambers of Judge Jeffrey A. Meyer. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.


_/ s /  Peter Goselin_

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


EARL S. KNIGHT,                                    :
      Plaintiff,                                :
                                :
      v.                                         :        Case No. 3:13-cv-1882 (JAM)
                                :
CEREJO, *Detective*, et al.,                      :
      Defendants.                               :


## RULING ON MOTIONS FOR SUMMARY JUDGMENT

*Pro se* plaintiff Earl Knight is presently serving a prison term following his conviction in Connecticut state court on charges of criminal possession of narcotics with intent to sell and criminal possession of a firearm. In this federal lawsuit for money damages under 42 U.S.C. § 1983, plaintiff claims that the police violated his constitutional rights in connection with the investigation that led to his conviction and that his defense attorney rendered constitutionally ineffective assistance of counsel. All parties now move for summary judgment. I will grant defendants' motions and deny plaintiff's motion, principally on the ground of qualified immunity and on the ground that this lawsuit for damages under § 1983 is a procedurally improper attack on plaintiff's conviction and thereby foreclosed by *Heck v. Humphrey*, 512 U.S. 477 (1994).

### BACKGROUND

The following facts are accepted as true for purposes of the motions for summary judgment.[1] On September 26, 2011, defendant Detective John Cerejo and other Meriden police officers conducted surveillance near 253 Cook Avenue in Meriden, Connecticut. The

---

[1] The facts set forth here are taken from defendants' Local Rule 56(a)(1) Statements and supporting exhibits. Plaintiff has not filed a counterstatement pursuant to Local Rule 56(a)(2), and the Court's local rules provide that the facts set forth in a moving party's statement under Local Rule 56(a)(1) will be deemed admitted if a non-moving party fails to file a proper counterstatement of material facts as required under Local Rule 56(a)(2) and 56(a)(3).

surveillance resulted from complaints by area residents that three men were dealing drugs from a residential building at that address. Cerejo and his colleagues surreptitiously surveilled the men and saw one of them engage in what appeared to be a hand-to-hand narcotics transaction.

Soon, however, the three men became aware that the police were watching them. Cerejo then approached them, displaying his badge and identifying himself as a police officer, and he ordered the men to stay where they were. Plaintiff and a second man complied, but the third man ran into the residence building, first through a common area on the ground floor, and then into a first floor apartment, locking the apartment door behind him.

Cerejo pursued the fleeing male into the common area, through a door that was already open, but did not enter the locked apartment. Plaintiff, however, immediately followed Cerejo and tried to grab him to stop him from entering the building. Another police officer arrested plaintiff for his attempted interference with and assault on Cerejo. Plaintiff denied knowing the identity of the third man who had fled into the apartment.

In the meantime, numerous occupants came out of other residential units in the building and loudly protested the police presence. The scene was chaotic and tinged with racial tension and race-related remarks. Plaintiff's mother soon arrived on the scene and indicated that she lived in the apartment where the third man was. She was hostile toward the police. After Cerejo told her that there was an unknown man in her apartment, she said that no one should be in her apartment and that she would go inside to see if anyone was there. She refused Cerejo's request that he accompany her into the apartment, and she then entered the apartment through the back door.

After plaintiff's mother was inside, Cerejo heard her screaming at someone to get out of

2

her home. According to his summary judgment affidavit, Cerejo believed that plaintiff's mother's safety was in jeopardy, and so he entered the apartment and went to the room where plaintiff's mother was yelling. In that room, plaintiff's mother had opened a closet door, and the unknown male was crouched on the floor.

Cerejo took the male into custody, and he directed another officer to search the closet for contraband. The search of the closet revealed a large amount of ammunition in plain view. In the meantime, plaintiff's mother became irate at Cerejo, and she was also placed under arrest for interfering with the police.

According to Cerejo's police report, after plaintiff's mother learned that ammunition had been found in her apartment, "she finally stopped being so uncooperative." Doc. #23-5 at 5. Plaintiff's mother claimed that there should be no ammunition in her apartment. The police "explained to her that this is a large safety risk (especially because a young baby resides in the house) to all the residents if there is a firearm also in the closet," and "[s]he agreed and then gave Detective Visconti consent to search." *Id.* at 5–6; *see also* Doc. #23-6 at 2–3.

Plaintiff's mother also signed a written consent form to allow the police to search her apartment (Doc. #23-7). She signed the consent form after having been advised of her *Miranda* rights and after being told that she could accompany the officers as they conducted the search. One of the police officers searched the closet, and he found a sawed-off rifle, a handgun, ammunition, and Ziploc bags commonly used to package narcotics. Elsewhere in the room, the police found a large amount of crack cocaine individually packaged for street sale. Plaintiff's mother told Cerejo that the room in which the firearms and narcotics were found was plaintiff's bedroom.

3

Plaintiff was thereafter charged with narcotics and firearms crimes based on the evidence found in his bedroom and closet, in addition to attempted assault and interference with a police officer. Doc. #23-5 at 7. On July 11, 2012, he pled guilty in Connecticut Superior Court to possessing narcotics with intent to sell and criminal possession of a firearm. On October 10, 2012, he was sentenced on these charges to a term of imprisonment of ten years, execution suspended after five years and with a five-year mandatory minimum, followed by three years of probation. He retained defendant Jason Goddard as an attorney who represented plaintiff for the guilty plea and sentencing.

In late 2013, plaintiff filed this lawsuit against defendants Cerejo and Goddard in Connecticut Superior Court, and defendants removed the action to this Court on the ground that plaintiff alleges violation of his federal constitutional rights. Plaintiff claims that Cerejo violated his Fourth Amendment rights, subjecting him to false arrest and malicious prosecution. He further claims that Goddard rendered constitutionally ineffective assistance of counsel, because he "[n]eglected to investigate the case as a whole" and because he "[p]ut the plaintiff to plead without explaining" that he faced "a 5 year mandatory which was not mentioned at all." Doc. #1-3 at 7. The Court has previously dismissed additional claims under the First and Eighth Amendments, as well as a claim against the Meriden police department. *See* Doc. #19. Both Cerejo and Goddard have now moved for summary judgment to dismiss the remaining claims, and plaintiff has cross-moved for summary judgment in his favor. *See* Docs. #23, 26, 31.

DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any

4

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). A plaintiff, however, may not rest on the allegations of his complaint as to matters that are controverted by a defendant's properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).[2] All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson*, 477 U.S. at 249).

The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The Fourth Amendment limits both searches and seizures. A "search" for purposes of the Fourth Amendment occurs when the police intrude upon a person's reasonable expectation of privacy or if the police otherwise trespass upon a suspect's person, house papers, or effects for the purpose of acquiring information. *See United States v. Jones*, 132 S. Ct. 945, 951 n.5 (2012); *United*

---

[2] Nor does the complaint in this record suffice as a competent summary judgment affidavit in view that it was not a verified complaint under oath. Doc. #1-3 at 8. *C.f. Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). The *pro se* plaintiff here was advised of his obligations with respect to producing affidavits or other competent evidence to support and oppose a motion for summary judgment in accordance with D. Conn. Local Civ. R. 56(b). Doc. #28.

*States v. Ganias*, 755 F.3d 125, 133 (2d Cir. 2014). A "seizure" under the Fourth Amendment occurs when the police intentionally terminate one's freedom of movement by means of physical force or by show of their official law enforcement authority. *See Brendlin v. California*, 551 U.S. 249, 254 (2007); *Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007).

It is well established that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States Dist. Court for Eastern Dist. of Mich.*, 407 U.S. 297, 313 (1972). Indeed, "[t]he core premise underlying the Fourth Amendment is that warrantless searches of a home are presumptively unreasonable." *Harris v. O'Hare*, 770 F.3d 224, 231 (2d Cir. 2014) (citing, *inter alia*, *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011)). If police officers have neither a warrant nor valid consent, they need no less than both probable cause and exigent circumstances in order to lawfully enter or remain in a person's home. *Ibid.* (citing *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (*per curiam*)); *Fernandez v. California*, 134 S. Ct. 1126, 1132 (2014).

Not every police violation of the Fourth Amendment may justify an award of money damages. That is because the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Carroll v. Carman*, 135 S. Ct. 348, 351 (2014). The Supreme Court has recently explained that "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Richard*, 134 S. Ct. 2012, 2023 (2014) (citation omitted).

6

In this manner, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014) (internal quotations marks and citation omitted). Thus, for example, to the extent that the Fourth Amendment requires the police to have probable cause to support a search or seizure, the police have qualified immunity provided that they have even *arguable* probable cause to support their actions. *See, e.g.*, *Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014).

The complaint here alleges multiple Fourth Amendment violations by defendant Cerejo. First, the complaint alleges that plaintiff was improperly arrested (seized) following his effort to stop Cerejo from entering the apartment. This claim lacks merit, because the undisputed facts establish at least arguable probable cause that plaintiff attempted to interfere with a police officer when he tried to physically prevent him from apprehending the third male. *See* Conn. Gen. Stat. 53a-49 (attempt), 53a-167a (interfering with an officer). Although plaintiff complains that he was not told the reason for his arrest, there is no clearly established law that required the police to tell him the grounds for arrest. *See Devenpeck v. Alford*, 543 U.S. 146, 155 (2004) ("While it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required.").

Plaintiff next complains that Cerejo unlawfully entered the apartment after plaintiff's mother had refused consent for him to do so.[3] But the uncontested summary judgment evidence shows that Cerejo entered the apartment because of concerns for the safety of plaintiff's mother after he heard her screaming. Although plaintiff disagrees, he was not present to witness the

---

[3] Although the complaint also alleges that Cerejo improperly entered the common area of the residential building as he was pursuing the third male, plaintiff has since withdrawn his challenge to that entry. Doc. #40 at 9, ¶ 19. In any event, plaintiff has done nothing to show that his privacy or property rights were infringed by police entry into the common area of the residential building where he apparently lived.

7

events involving Cerejo's entry, and he has not adduced competent summary judgment evidence to controvert Cerejo's account. It is well established that the police may enter a residence in their community caretaking function if a reasonable officer would believe it necessary to respond to an emergency and for the safety of persons inside. *See, e.g.*, *Brigham City v. Stuart*, 547 U.S. 398, 403, 406 (2006) (police entry to intervene in altercation inside home); *see also United States v. Simmons*, 661 F.3d 151, 157 (2d Cir. 2011). Exigent circumstances also arguably existed under the hot pursuit doctrine from the moment that the third male fled from the police into the apartment after the police had witnessed unlawful drug dealing activity and commanded the three men to stop. *See United States v. Moreno*, 701 F.3d 64, 72 (2d Cir. 2012) (citing *King*, 131 S. Ct. at 1856), *cert. denied*, 133 S. Ct. 2797 (2013). At the least, Cerejo is entitled to qualified immunity with respect to this aspect of plaintiff's claim, because plaintiff has not shown that Cerejo's entry into the apartment was in violation of clearly established law of which an objectively reasonable police officer should have been aware.

Plaintiff further contends that his mother did not validly consent to the search of his closet and bedroom where the firearms and drugs were found that were used as the basis for his conviction. But there is no genuine issue of fact to suggest that his mother's consent was involuntary and in violation of the Fourth Amendment. *See Moreno*, 701 F.3d at 72 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49 (1973)). Cerejo has attested that he obtained her voluntary consent, *see* Doc. #23-5 at 5–6, and he has introduced a signed copy of the consent form on which she verified that she was giving her voluntary consent to the police search of her apartment after having been advised of her right not to grant consent. Doc. #23-7 at 2. Although plaintiff contends that her consent was not voluntary, he was not present when she gave her

consent (having been already arrested and taken to the police station, Doc. #26 at 5), and he did not introduce any competent non-hearsay evidence (such as an affidavit from his mother) to controvert the evidence reflecting plaintiff's mother's voluntary consent. Nor has plaintiff shown that the officers could not reasonably have relied on the authority of plaintiff's mother to consent to the search of the closet and bedroom. *See Illinois v. Rodriguez*, 497 U.S. 177, 192–93 (1990). At the least, Cerejo is again entitled to qualified immunity with respect to this claim, because plaintiff has not shown that the consent search of the apartment was in violation of clearly established law of which an objectively reasonable police officer should have been aware.

Even assuming that a genuine issue of fact existed concerning the entry to and search of the apartment, plaintiff's challenge would still fail because a § 1983 action may not do service for a habeas corpus petition to serve as a vehicle for a challenge to the validity of a criminal conviction. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court made clear that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87. Plaintiff has done nothing to show that his conviction has been set aside. If a prisoner wishes to challenge his conviction, the proper vehicle is by means of a petition for writ of habeas corpus in Connecticut state court rather than an action for money damages in federal court under § 1983. *See also Wilkinson v. Dotson*, 544 U.S. 74, 78–82 (2005) (describing relationship between § 1983 actions and habeas corpus petitions).

9

To be sure, the *Heck* rule does not necessarily foreclose a Fourth Amendment claim as long as prevailing on the specific claim would not effectively demonstrate the invalidity of a prisoner's conviction. *See Heck*, 512 U.S. at 487 n.7; *see also Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir. 1999). But here, as the plea and sentencing transcripts show (Docs. #23-8, #23-9), plaintiff's convictions and sentences were based entirely on guns and drugs found at his mother's apartment. Indeed, in his opposition to summary judgment, plaintiff himself agrees: "The plaintiff asserts that without the contraband discovered during an illegal search of his bead-room [sic], the state would have no evidence to support the plaintiff's prosecution, and the plaintiff would likely not have pleaded guilty to any crime." Doc. #40 at 12.

Accordingly, there can be no doubt that plaintiff's Fourth Amendment claim—if successful—would demonstrate that his conviction was invalid, and therefore *Heck* forecloses plaintiff's claim. *See Covington*, 171 F.3d at 123 (*Heck* rule may apply "in a case where the *only* evidence for conviction was obtained pursuant to an arrest, [because] recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence"); *Clayton v. City of Poughkeepsie*, 2007 WL 2154196, at *3–4 (S.D.N.Y. 2007) (*Heck* rule foreclosed § 1983 claim based on Fourth Amendment violation that would have necessarily demonstrated the invalidity of underlying conviction).

Moreover, even were I to conclude that the alleged Fourth Amendment violation here did not imply the invalidity of plaintiff's conviction, *Heck* also makes clear that any compensatory damages for a claimed Fourth Amendment violation "does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." 512 U.S. at 487 n.7. Plaintiff's complaint quite candidly requests that the Court "revisit[] the criminal case

10

[e]ncompassing the foregoing facts and circumstances." Doc. #1-3 at 8. Although the complaint otherwise demands money damages, there has been no showing of any damages to plaintiff not involving the seizure of contraband that has led to his imprisonment and conviction. The lack of cognizable damages is further reason precluding plaintiff's § 1983 claim. *See Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) (*Heck* rule foreclosed damages from conviction and imprisonment, and complaint otherwise failed to allege damages from "brief invasion of privacy related to the seizure and initial search of [plaintiff's] person"). In short, plaintiff's claims against defendant Cerejo fail on grounds of qualified immunity and on grounds that they are otherwise foreclosed under *Heck v. Humphrey*.

Plaintiff's claim of ineffective assistance of counsel against Attorney Goddard also fails as a matter of law. First, because plaintiff's claim against his counsel doubtlessly implies the invalidity of plaintiff's convictions, the *Heck* rule forecloses his claim. *See Kevilly v. New York*, 410 Fed. App'x 371, 375 (2d Cir. 2010); *Trimble v. City of Santa Rosa*, 49 F.3d 583, 584–85 (9th Cir. 1995) (*per curiam*). Moreover, absent an allegation (not made here) that a defense attorney conspired with the prosecution or other state actors to deny a plaintiff his constitutional rights, it is well established that a defense attorney is not a state actor subject to constitutional liability at all under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004). Accordingly, I need not consider the merits of plaintiff's claim of ineffective assistance of counsel, because it is clear that plaintiff may not pursue this type of claim by means of a constitutional action for money damages under § 1983.

## CONCLUSION

Defendants Cerejo's and Goddard's motions for summary judgment (Docs. #23, #31) are

GRANTED. Plaintiff's cross-motion for summary judgment (Doc. #26) is DENIED.

The Clerk is directed to enter judgment in favor of defendants and close this case.

**SO ORDERED**.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

Dated at Bridgeport, Connecticut, this 2nd day of March 2015.