UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KARÉON SIERRA,
  a/k/a Caron Sierra,
    *Plaintiff*,

    v.

NEW ENGLAND PERSONNEL OF
HARTFORD, LLC, *et al.*,
    *Defendants*.

No. 3:15-cv-1520 (JAM)

**RULING ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Karéon Sierra worked for several years for defendant New England Personnel (NEP). She has filed this lawsuit against NEP as well as two of its principals, claiming that defendants failed to pay her overtime in violation of the federal Fair Labor Standards Act (FLSA) and the Connecticut Minimum Wage Act (CMWA). Plaintiff has now moved for partial summary judgment on various issues of liability and damages. For the reasons set forth below, I will grant in part and deny in part the motion for summary judgment.

### BACKGROUND

Plaintiff worked for defendant NEP from 2011 to 2014. NEP was in the business of the recruitment and placing of candidates in the management, healthcare, nursing, financial, construction, architecture, manufacturing, and legal fields. It was owned by defendant Thomas Melanson who also served as the company president. His spouse, defendant Kathryn Clark Melanson, was its chief operating officer. Because of significant medical issues, Thomas Melanson was far less involved in the business than Kathryn Melanson during the years that plaintiff worked there.

As a recruiter, plaintiff was responsible for aggregating and pre-screening potential candidates that could fill jobs for NEP's clients. Plaintiff would be given a folder of resumes

1

from Kathryn Melanson, as well as a set of criteria that potential candidates would have to meet to be eligible for a client's open position. From that folder, plaintiff would reach out to specific candidates she believed met the criteria, and she would inquire whether the potential candidate was interested in the potential job opening. Based on her conversations with a potential candidate, plaintiff would generate a written summary about each candidate on a template created by defendants, setting forth work histories and other pertinent information that would be used in turn by Kathryn Melanson to propose certain candidates to a client.

Although Kathryn Melanson retained discretion to veto a candidate, she relied heavily on her recruiters' recommendations about whether a potential candidate should be recommended to a client, because only the recruiter would have had direct contact with a candidate during the initial stages. Using recruiter recommendations, Kathryn Melanson would speak to the client and propose candidates; she did not allow plaintiff to speak directly with clients. Afterwards and based on Kathryn Melanson's conversations with the client, plaintiff would contact selected candidates and schedule interview appointments. Plaintiff's annual salary was $47,000, but if a candidate screened by plaintiff was placed with a client, plaintiff received payment of an additional commission that could range from hundreds of dollars to thousands of dollars per placed candidate. *See* Doc. #29-3 at 2–3.

When she was hired, plaintiff was originally told to work a 40-hour work week. In fact, she worked more than 40 hours per week for at least some of her weeks of employement, and she was not paid overtime when she did. In justifying why NEP did not pay plaintiff overtime, Kathryn Melanson explained that she had relied on a labor lawyer's opinion from about 33 years ago. Doc. #29-2 at 18–19. Additionally, Kathryn Melanson was "updated" in "labor law" from

2

her internet searches and her involvement in the National Association of Personnel Consultants. Doc. #29-2 at 20.

Plaintiff's lawsuit alleges three causes of action. Count One of the complaint alleges that defendants failed to pay overtime in violation of the federal Fair Labor Standards Act (FLSA). Count Two alleges that defendants failed to pay overtime in violation of the Connecticut Minimum Wage Act (CMWA). Count Three alleges that defendants failed to pay commissions in violation of the CMWA.

Plaintiff now moves for partial summary judgment on four diverse grounds. First, plaintiff moves for partial summary judgment as to her FLSA and CMWA overtime claims, contending that there is no genuine issue of fact that she worked more than 40 hours per week for at least some weeks of her employment, that she was eligible under both the FLSA and CMWA for overtime payments, and that she was not otherwise an exempt employee. Second, plaintiff moves for summary judgment on the applicable FLSA statute of limitations, contending that it should be longer because of defendant's willful conduct. Third, plaintiff moves for summary judgment on the issue of whether she is entitled to double damages, contending that such damages are warranted because defendants did not act in good faith. Lastly, plaintiff moves for summary judgment on the issue of whether the individual defendants—Kathryn and Thomas Melanson—are individually liable as "employers" for purposes of her federal and state overtime claims.

DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan,* 134 S.Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### Eligibility and Exemptions under the FLSA and CMWA

The parties do not presently dispute that plaintiff worked more than 40 hours per week in at least some weeks of her employment.[1] The focus of their dispute is whether plaintiff qualified for one or more exemptions under the FLSA and the CMWA.

Congress enacted the FLSA to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA imposes numerous "wage and hour" requirements, including that employers must pay an employee at a rate of "not less than one and one-half times the regular rate at which he is employed" for any hours worked in excess of forty hours in a given week. *Id.* § 207(a). The CMWA imposes similar obligations as the FLSA for the payment

---

[1] Although plaintiff contends that she worked overtime she does not seek summary judgment as to the number of hours that she worked overtime or on her claims themselves. Nor does she seek summary judgment for unpaid commissions as alleged in Count Three of the complaint.

of overtime wages. *See Arasimowicz v. All Panel Sys., LLC*, 948 F. Supp. 2d 211, 216 (D. Conn. 2013).

The employer bears the burden of proving that an employee falls within one of the FLSA's exemptions. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). Because the FLSA is a remedial law, its exemptions are narrowly construed, and any exemption must be plainly and unmistakably within the terms and spirit of the FLSA. *See Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010); *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002). The parties have addressed three potential exemptions, and I will consider each of them in turn.

*1. Exemption for Employment in Bona Fide Administrative Capacity*

Defendants claim that plaintiff's duties were essentially administrative such that her employment was exempt from the FLSA. The FLSA includes an exemption for any employee who works in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). To qualify for this exemption, an administrative employee must (1) be compensated on a regular basis at a rate of not less than $455 per week; (2) primarily perform office or non-manual work that is "directly related to the management or general business operations of the employer or the employer's customers"; and (3) primarily perform work that "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200. The parties do not dispute that plaintiff was paid more than $455 per week, but dispute whether a genuine fact issue remains as to the last two factors.

The two factors in dispute are quite broadly worded. Perhaps for this reason, the Department of Labor (DOL) has issued regulations that elaborate at great length on the meaning

of these provisions. *See* 29 C.F.R. §§ 541.201-541.203; *see also Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 559 (2d Cir. 2012) (deferring to these regulations).

I will start with what the regulations say about the first provision—that the work be "directly related to the management or general business operations of the employer or the employer's customers." The regulations state in part that "[t]o meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." § 541.201(a). This embodies what the Second Circuit has deemed to be an "administrative/production dichotomy," which is "an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business." *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 532, 535 (2d Cir. 2009) (applying prior similarly phrased regulation).

At first glance, it seems clear to me that plaintiff here falls on the "production" side of this dichotomy—her duties involved production of the core product of NEP's business: the identification and recruitment of employment candidates for other businesses to hire. But this conclusion overlooks the fact that the regulations instruct that an employee's role must be evaluated not merely by reference to the function one serves for one's own employer but also by reference to the function one serves for the employer's customers. *See* § 541.201(c). "Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." *Ibid.*

If I consider plaintiff's function with respect to the role she played for NEP's customers, there is a strong argument that her function was "administrative" rather than "production" in

6

nature. Indeed, her duties involve the same personnel recruitment functions that many businesses might perform in-house through their human resources department, and the regulations provide that functions such as "personnel management" and "human resources" and "similar activities" all fall on the "administrative" side of the administrative/production dichotomy. § 541.201(b). Accordingly, as to the second factor (whether plaintiff's duties "directly related to the management or general business operations of the employer or the employer's customers"), I conclude that there is at least a genuine fact issue remaining on this issue.

That brings me to the third factor—whether plaintiff's job "includes the exercise of discretion and independent judgment with respect to matters of significance." The regulations instruct that "[i]n general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered," and that "the term 'matters of significance' refers to the level of importance or consequence of the work performed." § 541.202(a). The same regulation then goes on to describe multiple factors to be considered which principally include among others the employee's "authority to formulate, affect, interpret, or implement management policies or operating practices;" "whether the employee carries out major assignments in conducting the operations of the business;" "whether the employee performs work that affects business operations to a substantial degree;" "whether the employee has authority to waive or deviate from established policies and procedures without prior approval;" and "whether the employee has authority to negotiate and bind the company on significant matters." § 541.202(b).

In light of these factors (and all others specified in the regulation), it is clear to me that the evidence falls well short of showing that plaintiff's job involved the "exercise of discretion

and independent judgment with respect to matters of significance." Plaintiff had no

policymaking authority, did not carry out major assignments for the overall business, and had no

authority to bind the company on significant matters. To the contrary, her work was entirely

subordinate to and under the independent review and direction of Kathryn Melanson. *See also*

*Harper v. Gov't Employees Ins. Co.*, 586 F. App'x. 772, 774 n.* (2d Cir. 2014) (noting that

employees "did not qualify as administrative employees where they performed such routine

processing functions that they failed to affect the employer's general business operations").

    My conclusion is reinforced by consideration of yet another part of the regulations that

describes what is exempt and what is non-exempt in the particular "human resources" context:

> (e) Human resources managers who formulate, interpret or implement employment
> policies and management consultants who study the operations of a business and propose
> changes in organization generally meet the duties requirements for the administrative
> exemption. However, personnel clerks who "screen" applicants to obtain data regarding
> their minimum qualifications and fitness for employment generally do not meet the duties
> requirements for the administrative exemption. Such personnel clerks typically will reject
> all applicants who do not meet minimum standards for the particular job or for
> employment by the company. The minimum standards are usually set by the exempt
> human resources manager or other company officials, and the decision to hire from the
> group of qualified applicants who do meet the minimum standards is similarly made by
> the exempt human resources manager or other company officials. Thus, when the
> interviewing and screening functions are performed by the human resources manager or
> personnel manager who makes the hiring decision or makes recommendations for hiring
> from the pool of qualified applicants, such duties constitute exempt work, even though
> routine, because this work is directly and closely related to the employee's exempt
> functions.

§ 541.203(e).

    In essence, this example contrasts the functions of a non-exempt "personnel clerk" with

the functions of an exempt "human resources manager." On the one hand, a "personnel clerk"

applies pre-ordained mechanical criteria ("minimum standards") to screen certain job applicants.

On the other hand, a "human resources manager" is one who "formulate[s], interpret[s] or

implement[s] employment policies," who sets the "minimum standards," and who makes "the

decision to hire from the group of qualified applicants who do meet the minimum standards." The undisputed evidence here shows that plaintiff's job duties were far closer to that of a "personnel clerk" than a "human resources manager."

The DOL has also issued opinion letters regarding the applicability of the administrative exemption to recruiters in staffing agencies (Doc. #29 at 26–31), but the recruiters described in those letters had considerably more authority than plaintiff did here; those recruiters had authority to hire or fire candidates, to make direct recommendations to clients, to manage and discipline candidates, and to set human resources policies for their clients. *See Ogden v. CDI Corp.*, 2010 WL 2662274, at *3 (D. Ariz. 2010) (distinguishing DOL letters on similar bases).

Accordingly, for purposes of plaintiff's summary judgment motion, I conclude that no genuine fact issue remains to suggest that plaintiff's job involved the "exercise of discretion and independent judgment with respect to matters of significance." Therefore, even viewing the facts in the light most favorable to defendants, defendants have not carried their burden to show a fact issue to sustain their claim that plaintiff was exempt from the FLSA pursuant to the exemption for employees who work in a "bona fide administrative capacity." 29 U.S.C. § 213(a)(1). And the same holds true to the extent that defendants claim a corresponding exemption from the CMWA pursuant to Conn. Gen. Stat. § 31-76i(e). *See, e.g.*, *Morrison v. Ocean State Jobbers, Inc.*, 2015 WL 5684021, at *3-4 (D. Conn. 2015).

*2. Commission Exemption for Retail or Service Establishments*

Defendants next contend that plaintiff was exempt from the FLSA pursuant to an exemption for employees of a "retail or service establishment" who make more than half their income from commissions on services. *See* 29 U.S.C. § 207(i). Plaintiff contends that this exemption cannot apply to her because NEP was not a "retail or service establishment."

I agree with plaintiff that there is no genuine fact issue to suggest that NEP was a "retail or service establishment" within the meaning of FLSA or its regulations. "A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 C.F.R. § 779.312. Only "services rendered by establishments which are traditionally regarded as local retail service establishments such as the restaurants, hotels, barber shops, repair shops, etc." qualify as a retail or service establishment. 29 C.F.R. § 779.314. The cornerstone of the "retail concept" of the "retail or service establishment" exemption is that the service in question be provided "to the general public" and that the establishment "serves the everyday needs of the community in which it is located. . . . [and that it] provides the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living." 29 C.F.R. § 779.318(a). It is clear that NEP does not meet these criteria for a retail establishment.

The DOL regulations further note that "employment agencies" generally lack a "retail concept." *See* 29 C.F.R. § 779.317. Courts discussing this regulation have found it persuasive and have agreed that employment agencies lack a retail concept because employment agencies serve corporate clients in a manner that cannot reasonably be considered "retail" in nature. *See, e.g.*, *Kelly v. A1 Tech.*, 2010 WL 1541585, at *15–*16 (S.D.N.Y. 2010) (citing cases). Accordingly, I conclude that there is no genuine issue of fact or law to suggest that NEP was a "retail or service establishment" within the scope of the FLSA exemption.

### 3. *Inside Sales Exception*

Defendants next contend that plaintiff was not subject to the CMWA pursuant to a statutory exception for "any inside salesperson whose sole duty is to sell a product or service."

Conn. Gen. Stat. § 31-76i(g). I do not agree. There is no evidence that plaintiff sold any services at all. Her job was to identify and screen potential candidates, and it was Kathryn Melanson who engaged in any sales of these candidates to prospective employers.

In short, I will grant plaintiff's motion for summary judgment for Counts One and Two insofar as plaintiff claims that she was a qualifying employee for purposes of the FLSA and CMWA. Defendants do not dispute that plaintiff worked enough hours to qualify for overtime pay, and I conclude that defendants have not otherwise carried their burden to show a fact issue that any of the exemptions they claim apply in this case.

### Statute of Limitations

Plaintiff next moves for summary judgment on the issue of whether defendants' violation of the FLSA was "willful," such that the statute of limitations for her FLSA claim should be three years rather than two years. *See* 29 U.S.C. § 255(a). Plaintiff bears the burden to prove willfulness, and willfulness requires a showing that the employer knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. *See Porter v. New York Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (*per curiam*); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999).

Viewing the facts in the light most favorable to defendants, I conclude that plaintiff has failed to show the absence of any genuine issue of fact as to willfulness. The defendants allegedly relied on a lawyer's opinion from 33 years ago, as well as intermittent research in the intervening years. Doc. #29-2 at 18–20. To the extent that plaintiff faults defendants for not researching further, this failure may be equally chalked up to negligence rather than willfulness. Or at least a jury could so decide. Accordingly, I will deny plaintiff's motion for summary

judgment insofar as it seeks summary judgment on the issue of willfulness for purposes of the statute of limitations under 29 U.S.C. § 255(a).

### Double Damages

For purposes of her claim for liquidated double damages, plaintiff also moves for summary judgment on the issue of whether defendants acted "in good faith" and under circumstances evincing "reasonable grounds for believing" that their actions did not violate FLSA. *See* 29 U.S.C. § 260; Conn. Gen. Stat. § 31-72. As the Second Circuit has explained, "[t]he employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." *Herman*, 172 F.3d at 142. "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Ibid.*; *see also Barfield v. New York City Health and Hosp. Corp.*, 537 F.3d 132, 150-51 (2d Cir. 2008) (same).

Although this is a closer call than the "willfulness" issue discussed above, I will also deny summary judgment on the "good faith" issue. Drawing all reasonable inferences as I must in defendants' favor, defendants arguably took "active steps" to ascertain the dictates of the FLSA by seeking the advice of counsel (albeit 33 years ago) and performing some research in the intervening years. A genuine fact issue remains about whether defendants could have reasonably believed plaintiff to be exempt, particularly in light of the complicated resolution as discussed above of whether her employment was subject to the "bona fide administrative capacity" exception.[2] It is for the jury to decide whether defendants acted in good faith, and

---

[2] As for the issue of double damages under Connecticut law, during the time plaintiff was employed by defendants, plaintiff would have been able to recover double damages and attorney's fees pursuant to Conn. Gen. Stat. § 31-72 only if she showed that defendants had "acted with bad faith, arbitrariness or unreasonableness." *See Sarrazin v. Coastal, Inc.*, 311 Conn. 581, 615 (2014). The statute was later amended to fall in line with the FLSA, authorizing an employer's good-faith defense to double damages (but not to attorney's fees), effective October 1, 2015. *See* Conn. Gen. Stat. § 31-72 ("When any employer fails to pay an employee [overtime] wages . . . such employee . . . shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable

therefore I will deny plaintiff's motion for summary judgment insofar as it seeks summary judgment on the issue of good faith for purposes of the award of any liquidated damages.

### Individuals as "Employers" Under the FLSA and CMWA

Finally, plaintiff moves for summary judgment on the issue of whether the Melansons qualify as "employers" for purposes of FLSA and the CMWA. Because defendants do not contest that Kathryn Melanson was an employer, I will consider only the issue of whether Thomas Melanson was an employer.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Second Circuit instructs that "the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). Thus, the court of appeals has cited the following four factors "to determine the 'economic reality' of an employment relationship: whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 104-05. Moreover, in order to be individually liable as an "employer" under the FLSA, an individual need not perform day-to-day operations with respect to all aspects of a business, but rather need only retain some control—even if unexercised or exercised just occasionally—over a company's operations as they relate to employment, such as involvement in workplace conditions and operations, personnel, or compensation. *Id.* at 110–11.

---

attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court."). Plaintiff filed her complaint on October 20, 2015, but summary judgment under either standard is inappropriate for the reasons stated above.

Thomas Melanson was the owner and president of NEP. Plaintiff adduced admissible evidence that she interviewed with him, saw him sporadically in the office and in staff meetings, was directed by him about the way he believed she should be performing her job duties, and that he was consulted by his spouse in employment-related decisions, including in hiring and the calculation of commissions. *See* Doc. #26-7 at 1–2. Defendants did not provide admissible evidence to controvert plaintiff's evidence in this respect, but argue instead that Thomas Melanson's medical condition made it "unlikely" that he was "as involved in the running of a business as the plaintiff describes." Doc. #29 at 20. On balance, I conclude that it is for the jury to decide if Thomas Melanson was an employer for FLSA purposes.

The CMWA's definition of "employer" is narrower than its FLSA counterpart. *See Butler v. Hartford Tech. Inst., Inc.*, 243 Conn. 454, 462 n.8, 463–64 (1997) (rejecting economic reality test and holding that "an individual personally can be liable as an employer pursuant to § 31-72, notwithstanding the fact that a corporation is also an employer of the claimant, if the individual is the ultimate responsible authority to set the hours of employment and to pay wages and is the specific cause of the wage violation."); *see also Mendez v. Pure Foods Mgmt. Grp., Inc.*, 2016 WL 183473, at *3 (D. Conn. 2016) ("Connecticut state courts have declined to apply the federal test to state-law claims, instead considering factors such as whether the alleged employer set the hours of employment, paid wages, exercised control over day-to-day responsibilities, or ran other daily operations.").

I conclude that defendants have raised a triable issue of fact regarding whether Thomas Melanson was the "ultimate responsible authority" to set the hours of employment and to pay wages, and whether he was the specific cause of the wage violation. Accordingly, I will grant

summary judgment as to Kathryn Melanson's "employer" status but deny summary judgment as to Thomas Melanson's employer status for purposes of both the FLSA and CMWA.

## CONCLUSION

Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part. The motion is GRANTED insofar as plaintiff claims (1) that she was an employee who was eligible for overtime pay and not otherwise exempt under the FLSA and the CMWA, and (2) that defendant Kathryn Clark Melanson is an "employer" for purposes of the FLSA and CMWA. The motion is DENIED insofar as plaintiff claims (1) that the 3-year statute of limitations should apply; (2) that liquidated double damages are warranted; and (3) that defendant Thomas Melanson is an "employer" for purposes of the FLSA and CMWA.

It is so ordered.

Dated at New Haven, Connecticut this 28th day of August 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge